**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                      **No. 03-338**

**MELVIN LUTCHER**                                    **SECTION: I/2**

## ORDER AND REASONS

Before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28

U.S.C. § 2255, filed on behalf of defendant, Melvin Lutcher ("Lutcher").[1]  For the following

reasons, the motion is **DENIED** and Lutcher's application for post-conviction relief is

**DISMISSED WITH PREJUDICE**.

### *BACKGROUND*

On October 30, 2003, Lutcher and others were charged in an eleven-count indictment

returned in the Eastern District of Louisiana.[2]  Lutcher was charged in two of those counts.  First,

count one charged Lutcher with conspiracy to possess with intent to distribute 50 grams or more

of cocaine base and quantities of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and

841.  Second, count nine charged Lutcher with use of a communications facility in committing,

causing, and facilitating the commission of the conspiracy, in violation of 21 U.S.C. § 843(b).

---

[1] R. Doc. No. 321, 2255 motion; R. Doc. No. 321-2, mem. supp.

[2] R. Doc. No. 1, indictment.

On December 4, 2003, Lutcher pled not guilty to the charges.[3]  At his plea, Lutcher was represented by Wayne Mancuso ("Mancuso").  Mancuso was replaced by attorney Michael Reese Davis ("Davis") on February 2, 2004.[4]  Davis was replaced by attorney Patrick Fanning ("Fanning") on June 25, 2004, who represented Lutcher at trial.[5]

Jury trial commenced on October 12, 2004.  Lutcher went to trial with his son and co-defendant, Melvin Lutcher, Jr.,[6] who was represented by Gary Bizal ("Bizal").  The jury returned a verdict on October 14, 2004.[7]  The jury found Lutcher guilty of conspiracy to possess with intent to distribute 50 grams or more of cocaine base.  The jury found that the conspiracy did not involve cocaine hydrochloride, as charged in the indictment.  The jury also found Lutcher guilty of the unlawful use of a communications facility.

On February 16, 2005, this Court sentenced Lutcher to 293 months' imprisonment for the conspiracy count and 48 months' imprisonment on the communications facility count, to be served concurrently.[8]  Lutcher was represented by Fanning through the sentencing hearing.

Fanning filed a notice of appeal on Lutcher's behalf the same day of the sentencing and then terminated his representation of Lutcher.  Lutcher was represented on appeal by attorney Christopher Aberle ("Aberle").  The Fifth Circuit affirmed this Court's judgment on June 6,

---

[3] R. Doc. No. 66.

[4] R. Doc. No. 101.

[5] R. Doc. No. 194.

[6] On March 10, 2009, this Court denied Lutcher, Jr.'s § 2255 motion.  See R. Doc. No. 412.

[7] R. Doc. No. 241.

[8] R. Doc. No. 255.

2006.[9]

Lutcher filed his motion to vacate on July 24, 2007.  The government filed its response on November 9, 2007.[10]  Lutcher filed a reply memorandum on December 10, 2007.[11]  Lutcher then filed a supplemental memorandum on December 19, 2007.[12]  The government filed a response to Lutcher's supplemental memorandum on January 16, 2008.[13]

Lutcher's claims are based on allegedly ineffective assistance of counsel during various phases of the proceedings, including pretrial, trial, sentencing, and appeal.

## *LAW AND ANALYSIS*

## I.    OVERVIEW OF 28 U.S.C. § 2255

Section 2255 allows a prisoner in custody to attack his sentence on grounds that it was "imposed in violation of the Constitution or laws of the United States," or "that the court was without jurisdiction to impose such sentence," or "that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[14]  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a

---

[9] R. Doc. No. 303.

[10] R. Doc. No. 333, mem. opp'n.

[11] R. Doc. No. 337, reply.

[12] R. Doc. No. 339, supp. mem. supp.  This document was styled "Permission to Amend Petitioner's 28 U.S.C. 2255."

[13] R. Doc. No. 344, supp. mem. opp'n

[14] 28 U.S.C. § 2255.

complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*quoting United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate 'cause' and 'actual prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). "This cause and actual prejudice standard presents 'a significantly higher hurdle' than the 'plain error' standard that we apply on direct appeal." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc) (*quoting United States v. Frady*, 456 U.S. 152, 166 (1982)).

To meet the cause requirement, the defendant must show that "'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (*quoting Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992)). "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.* To satisfy the actual prejudice requirement, the defendant must "demonstrate[] that, but for the error, he might not have been convicted." *Id.* at 994.

Here, Lutcher claims that he is entitled to relief under 28 U.S.C. § 2255 because the ineffective assistance of his trial counsel and appellate counsel deprived him of his rights under the Sixth Amendment. Ineffective assistance of counsel claims satisfy the cause-and-prejudice standard, and are ordinarily first raised on collateral review, due to the difficulty of compiling an

adequate record by the time of direct appeal. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992). Furthermore, the Supreme Court has held that defendants may raise ineffective assistance of counsel for the first time on collateral review even if the defendant had possessed an adequate record by the time of direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2004). The *Massaro* Court explained that a trial transcript is unlikely to show the existence of conflicts of interest or whether or not trial counsel's actions were supported by reasonable strategy. *Id*. at 505. The Court concluded that the "better-reasoned approach is to permit ineffective-assistance claims to be brought in the first instance in a timely motion in the district court under § 2255." *Id*. at 504.

## II.      INEFFECTIVE ASSISTANCE OF COUNSEL

The standard for judging the performance of counsel was established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Id.* at 697. In order to satisfy the first *Strickland* prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A defendant must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *Id.* at 697.

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will 'indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time [of trial]." *Strickland*, 466 U.S. at 689. "[A] court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (*citing Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test looks to any prejudice suffered as a result of counsel's deficient performance. This prong requires "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *United States v. Mullins*, 315 F.3d 449, 456 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 695). The defendant must show that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (internal quotation marks omitted) (*quoting Strickland*, 466 U.S. at 687).

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Appellate counsel's performance is evaluated under the same *Strickland* standard as is trial counsel's performance. *Id.* "To prevail, [the defendant] must establish, first, that his

attorney's representation was deficient and, second, that the deficient performance caused him prejudice." *Id.* With respect to the deficient performance prong in the appellate context, the Fifth Circuit has stated that "[c]ounsel does not need to 'raise every nonfrivolous ground of appeal available.' Nonetheless, a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.* (*quoting Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). With respect to the prejudice prong, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional error[ ], the result of the proceeding would have been different." *Id.* at 463 (*quoting Jones v. Jones*, 163 F.3d 285, 302 (5th Cir. 1998)) (alteration in original) (internal quotation marks omitted). "A reasonable probability is that which renders the proceeding unfair or unreliable, *i.e.*, undermines confidence in its outcome." *Id.*

## III.    LUTCHER'S CLAIMS

### A.    *Failure to File a Motion to Dismiss the Indictment*

Lutcher contends that prior to trial, Davis "should have written a motion to the district court to dismiss the Grand Jury indictment, based on the grounds that the government failed to charge Lutcher, Sr. with a felony offense."[15] He also contends that Fanning "failed to raise defense and objection to the grand jury indictment."[16]

"Generally, an indictment which follows the language of the statute under which it is

---

[15] 2255 motion at 4.

[16] Mem. supp. at 50.

brought is sufficient to give a defendant notice of the crime of which he is charged." *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003). The indictment in this case tracks the language of the relevant statutes.[17] Count one stated, in full:

> Beginning at a time unknown to the Grand Jury, but prior to January 17, 2002, and continuing until on or about October 24, 2002, in the Eastern District of Louisiana and elsewhere, the defendants, **GERSHONE JOHNSON**, a/k/a Spook, **MELVIN LUTCHER**, a/k/a Big Mel, a/k/a Mel, **MELVIN LUTCHER, JR.**, **STANLEY MORGAN**, a/k/a Stan, **TONEY SMITH**, **ANTHONY THOMAS**, a/k/a Demon, **CLIFFORD WESTBROOKS**, and **GERALD WOODS**, a/k/a Fonz, did knowingly and intentionally combine, conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury, to possess with intent to distribute 50 grams or more of cocaine base and quantities of cocaine hydrochloride, both Schedule II narcotic drug controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C); all in violation of Title 21, United States Code, Section 846.

The indictment with respect to count one was, therefore, sufficient to charge the felony offense of conspiracy to possess with intent to distribute.[18] To the extent Lutcher complains that the indictment failed to allege intent,[19] his allegation lacks merit as the indictment states that defendants "did . . . *intentionally* combine, conspire, confederate and agree with each other and

---

[17] 21 U.S.C. § 841(a) states in pertinent part: "it shall be unlawful for any person knowingly or intentionally – (1) to . . . possess with intent to . . . distribute . . . a controlled substance." 21 U.S.C. § 846 states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

[18] To the extent Lutcher also objects to Fanning's and Davis's failure to contest count nine of the indictment, his claim lacks merit. Count nine, alleging the use of a communications facility, tracks the language of 21 U.S.C. § 843(b), specifies the date upon which Lutcher is alleged to have used the communications facility (August 31, 2002), and also specifies the communications facility used by Lutcher, *i.e.*, a telephone.

[19] Reply at 24-26.

with other persons." Davis's and Fanning's failure to file a motion to dismiss the indictment

was, therefore, not objectively unreasonable under *Strickland*.

B.      *Failure to Strike a Juror*

Lutcher argues that Fanning's failure to request removal of a juror was error that

constitutes ineffective assistance.[20]  During trial, the Court conducted a conference with Juror

Number 8 and defense counsel to allay security concerns she had about the defendants' possible

knowledge of her address.[21]  Lutcher waived his right to be present during this conference with

the juror.[22]  Once her concerns were addressed by the Court, the juror expressed her ability to

remain impartial in rendering a verdict.[23]  Fanning, who attended the conference and relayed its

---

[20]  2255 motion at 4-5.

[21]  R. Doc. No. 274, trial transcript at 377-84.

[22]  *Id.* at 378.

[23]  The following colloquy occurred in chambers:
>       THE COURT: Does the concern that you have,
>       securitywise, does that in any way affect you in deliberating in
>       this case?
>       MS. LESCHAK: No.
>       THE COURT: If government does not sustain it's burden
>       of proof can you find the defendants not guilty?
>       MS. LESCHAK: Yes.
>       THE COURT: Notwithstanding the fact that they may have
>       seen your name?
>       MS. LESCHAK: Right.
>       THE COURT: Are you sure you can do that?
>       MS. LESCHAK: I think I can do that.
>       THE COURT: If the government sustained its burden of
>       proof at the end of trial, and I have no opinion on that
>       whatsoever, can you, in fact, find either of the defendants
>       guilty, if they sustained their burden as to that defendant?
>       MS. LESCHAK: Yes, I can. And my decision is going to
>       be independent of any concern I have, whether my name was shown
>       or not, but it's a concern.

*Id.* at 381.

substance to the defendant, decided not to move to excuse the juror.  Lutcher concurred on the record in this decision of counsel.[24]

An attorney's decision as to whether to request removal of a juror is generally a matter of trial strategy.  *See Ray v. Johnson*, 196 F.3d 1257, at *1 (5th Cir. 1999); *Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Wash v. Hood*, 2007 WL 3047149 (N.D. Miss. Oct. 17, 2007) (*citing Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995)).  Since the decision to request removal of a juror is a matter of trial strategy, it is entitled to a strong presumption of reasonableness.  *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (adopting a "strong presumption that strategic or tactical decisions made after an adequate investigation fall within

_____

[24] *Id.* at 384-85.  In his memorandum, Lutcher contends that "Counsels did not let defendants know what the juror said about the drugs and the firearms, also about the full context about the conference."  Mem. supp. at 41. This contention is undermined by the following colloquy held outside of the jury's presence following the conference with the juror:

> MR. FANNING: Judge, I just want to establish for the record that Mr. Bizal and I have conferred with our clients and related to them the substance of the juror's testimony during the conference that we had just now and that they concur with us that we should not move to excuse the juror based on the answers that she gave.
> THE COURT: Mr. Bizal?
> MR. BIZAL: That's correct, Your Honor.
> THE COURT: Is that correct, Mr. Lutcher, Jr.?
> MR. LUTCHER, JR.: Yes, sir.
> THE COURT: Mr. Lutcher, Sr.?
> MR. LUTCHER, SR.: Yes, sir.
> THE COURT: Do you understand what your counsel just said?
> BOTH OF THE DEFENDANTS ANSWER IN AFFIRMATIVE
> THE COURT: That's what you want to do?
> BOTH OF THE DEFENDANTS ANSWER IN AFFIRMATIVE
> THE COURT: Do you understand that by agreeing to that position, you can't later complain that the juror wasn't removed, do you understand that?
> BOTH OF THE DEFENDANTS ANSWER IN AFFIRMATIVE
> THE COURT: You still do not want that juror to be removed, is that correct? Both of you?
> BOTH OF THE DEFENDANTS ANSWER IN AFFIRMATIVE

R. Doc. No. 274, trial transcript at 384-85.  During the above colloquy, Lutcher clearly indicated that he understood the substance of the discussions during the juror conference and concurred in the decision not to attempt to remove her.

the wide range of objectively reasonable professional assistance).  In his motion, the defendant

states that trial counsel did not request removal of a juror because he believed that the alternate

juror who would take her place was a former police officer.[25]  This statement effectively

concedes that trial counsel's decision not to request removal was supported by a reasoned

decision.[26]  The defendant's claim that counsel's failure to request removal constitutes

ineffective assistance fails the first *Strickland* prong because the decision to retain the juror was

not objectively unreasonable and Lutcher concurred in said decision.


C.      *Failure to Object to Robert Christian's and Oliver McGill's Testimony*

Lutcher claims that Fanning was ineffective for failing to object to the testimony of FBI

special agents Robert Christian ("Christian") and Oliver McGill ("McGill").[27]  Christian testified

that he found a rifle, ammunition, and drugs at the Arlington, Texas business of Andrese

Villalobos ("Villalobos"), who was apparently one of the main sources of drugs for the

conspiracy in question.[28]  McGill testified that crack cocaine and firearms were discovered at the

residence of Dwayne Kennedy ("Kennedy"), and that Kennedy was wielding a firearm when he

was arrested during the search of his residence.[29]  Kennedy was the subject of a separate

---

[25]  2255 motion at 5.

[26]  *Id.*

[27]  *Id.*

[28]  R. Doc. No. 273, trial transcript at 262-65.

[29]  *Id.* at 175-78.  McGill also testified that a handgun was seized from Sterling Lewis's residence.  *Id.* at 180-81.  This handgun was admitted into evidence without objection from the defendant.  R. Doc. No. 274, trial transcript at 467.  In its opinion affirming the judgment, tthe Fifth Circuit noted that the defense even sought to rely on the handgun from Lewis's residence during its opening statement and closing argument.  R. Doc. No. 303 at 4.

conspiracy indictment, along with Villalobos.[30]

The testimony regarding guns and drugs seized from Villalobos and Kennedy was relevant testimony. The district court admitted the physical drug evidence from Villalobos and Kennedy, but excluded the physical firearm evidence seized from those individuals.[31] The admission of the tangible evidence was upheld on appeal.[32] There is no reason to think that the agents' testimony – the very basis for the admission of the tangible evidence – would have been treated differently. Any objection to the agents' testimony would have been overruled and, therefore, trial counsel's performance cannot be deemed deficient for failing to object. Lutcher's allegation fails to meet the first *Strickland* prong. For the same reason, the failure to object does not satisfy *Strickland* prejudice because it would not have affected the outcome of the trial.

D.      *Failure to Object to Guns and Drugs Evidence*

Lutcher argues that he was denied effective assistance because Fanning failed to object to the physical evidence of drugs and guns seized on the property of Kennedy and Villalobos.[33] The record shows that, pursuant to counsel's objection, the firearms seized from Kennedy's and Villalobos's properties were not admitted into evidence.[34] The record further reveals that

---

[30] R. Doc. No. 273, trial transcript at 184. Lewis testified that Kennedy's residence served as the "cool house" for the conspiracy, meaning that it was not subject to a high degree of police scrutiny. The powder cocaine would be "cooked" into crack cocaine at Kennedy's residence. See R. Doc. No. 274, trial transcript at 327-28.

[31] R. Doc. No. 274, trial transcript at 465-68.

[32] R. Doc. No. 303.

[33] 2255 motion at 5; mem. supp. at 35.

[34] R. Doc. No. 274, trial transcript at 466-68. The Court notes that the Fifth Circuit found no error in the admission of this evidence. R. Doc. No. 303.

Fanning's objection to the drugs and drug paraphernalia evidence was overruled.[35]  Since the record shows that Fanning did in fact object to the introduction of the drugs and guns into evidence, the defendant has failed to show that Fanning's performance was objectively unreasonable under the first *Strickland* prong.

Lutcher, however, argues that, even though the firearms were ultimately excluded as exhibits in evidence, they had already been displayed to the jury.[36]  Lutcher asserts that Fanning should have moved for exclusion prior to trial or objected contemporaneously during trial.  To the extent that Lutcher argues that the timing of Fanning's objection was deficient, his claim lacks merit.

Fanning was not deficient in failing to move for exclusion of the firearms prior to trial.  Lutcher's argument assumes that the Court would have ruled upon any such motion before trial, rather than deferring ruling until it had the benefit of hearing testimony supporting the admission of the evidence.  The record shows that the Court deferred ruling on defendants' motions in limine on Rule 404(b) evidence until trial.[37]  There is no reason to think the Court would not have similarly deferred ruling on any effort to exclude the drugs and firearms prior to trial as well.

Meanwhile, the Court specifically instructed the jury that only the admitted evidence could be considered and that any evidence stricken must be disregarded.[38]  Even if it could be

---

[35]  R. Doc. No. 274, trial transcript at 465-69.

[36] Mem. supp. at 55.

[37] R. Doc. No. 222.

[38] R. Doc. No. 275, trial transcript at 625.

argued that counsel's performance was deficient in failing to seek contemporaneous exclusion of the firearm evidence, there is no reason to believe the jury did not follow the cited instruction. *See United States v. Patino-Prado*, 533 F.3d 304, 312 (5th Cir. 2008) ("We will presume that jurors understand and follow their instructions, abandoning that presumption only when there 'is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect is devastating.'" (*quoting United States v. Barksdale-Contreras*, 972 F.2d 111, 116 (5th Cir. 1992))).  As a result, the defendant cannot show that the outcome of the trial would have been affected under the second *Strickland* prong.

E.    *Failure to File Post-Trial Motion for Acquittal*

Lutcher claims that he received ineffective assistance because, after the jury delivered its verdict, Fanning did not file a motion pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure to dismiss the government's case based on insufficient evidence.[39]  Rule 29(c) permits a defendant to move for a judgment of acquittal within seven days after the jury returns a guilty verdict.  When considering a Rule 29(c) motion, the district court must "assess whether a reasonable jury could have properly concluded, weighing the evidence in a light most deferential to the verdict rendered by the jury, that all of the elements of the crime charged had been proven beyond a reasonable doubt."  *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005).  The court does not "analyze the evidence with an eye toward negating every possible inference of innocence, rather, if the fact finder was presented with sufficient evidence to support the verdict

---

[39]  2255 motion at 5.

reached, that verdict must be upheld." *Id.*

Based on the above standard, it is clear that a motion for acquittal pursuant to Rule 29(c) would have been unsuccessful. Fanning moved for a judgment of acquittal at the close of the government's case, and reurged that motion at the close of the defendants' case.[40] This Court denied both motions.[41] In order to deny the motion, this Court had to have found that a rational juror could find the defendant guilty beyond a reasonable doubt. *See United States v. Morgan*, 505 F.3d 332, 341 (5th Cir. 2007). As this Court had already found that rational jurors could find Lutcher guilty prior to jury deliberations, it would not have found insufficient evidence to support a guilty verdict once such a verdict had been reached. In his § 2255 motion, the defendant does not explain why this Court would have been likely to find insufficient evidence to support the jury verdict if it had been presented with a Rule 29 motion. Since the defendant has not shown that a Rule 29 motion would have had a reasonable probability of success, he has failed to demonstrate prejudice under the second *Strickland* prong.


F.    *Failure to Argue Insufficiency of the Evidence on Appeal*

Lutcher contends that he was denied effective assistance because Aberle failed to raise a sufficiency of the evidence argument on direct appeal.[42] During trial, Sterling Lewis testified to Lutcher's involvement in drug transactions, and audio tapes were played to the jury in which

---

[40]  See R. Doc. No. 239 at 2.

[41]  *Id.*

[42]  2255 motion at 5.

Lutcher himself discussed drug transactions.[43]  To meet the first prong of the *Strickland* standard when an issue is not pursued on appeal, appellate counsel must "make an informed decision that certain avenues will not prove fruitful."  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (*quoting Williamson*, 183 F.3d at 462-63).

When reviewing a properly preserved claim of insufficient evidence, an appellate court will determine whether a reasonable jury could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt.  *United States v. Morgan*, 505 F.3d 332, 341 (5th Cir. 2007).  Considering this standard, and in light of the recorded phone calls in which Lutcher arranged a drug transaction, the calls in which Lutcher sought to obtain drugs, and Lewis's testimony, there was sufficient evidence for a reasonable jury to have convicted Lutcher.  Therefore, this argument would have failed on appeal and Aberle's decision not to pursue it was not deficient.  The defendant has failed to satisfy the first *Strickland* prong.

G.      *Failure to Object at Sentencing to Increase in Base Offense Level*

Lutcher contends that he received ineffective assistance of counsel when Fanning failed to object to the base offense level of 36 at the time of sentencing.[44]  Although the jury's verdict found that 50 grams or more of cocaine base was involved in Lutcher's conspiracy, the presentence report ("PSR") held Lutcher "responsible for trafficking in excess of 500 grams, but not more than 1.5 kilograms of cocaine base."[45]  Accordingly, the PSR calculated the base

---

[43] R. Doc. No. 274, trial transcript at 307, 329-37.

[44] 2255 motion at 6.

[45] Presentence report ¶¶45-46.

offense level at 36.  At sentencing, this Court found, by a preponderance of the evidence, that the evidence produced at trial supported the PSR's guideline calculation.[46]

Lutcher argues that "the district court never gave [Fanning] an opportunity to object to the court's ultimate finding of fact and conclusions of law."[47]  Fanning did, however, file a written objection to the PSR's calculation of the base offense level.  The sentencing transcript, meanwhile, shows that the Court heard argument from Fanning on two objections.[48]  The second objection went directly to the Court's calculation of the appropriate guideline range.  Fanning's argument on this point was cogently presented.  He stated: "And too, my objection is made on the basis that the underlying base offense level is from half a key to one [and] a half keys of cocaine base.  Five hundred grams . . . to one [and] a half keys as opposed to the sixty-three [grams] and the over fifty [grams] finding that were at trial."[49]  Therefore, Lutcher's assertion that Fanning failed to object to the base offense level is contradicted by the record and lacks merit.  Accordingly, Fanning's performance was not deficient and Lutcher's contention fails the first *Strickland* prong.

Lutcher's motion can be construed to argue that Fanning's deficiency was in failing to object to the *factual finding* supporting the 36 base offense level, rather than this Court's overall application of the sentencing guidelines to increase the base offense level.  It is true that Fanning

---

[46] R. Doc. No. 277, sentencing transcript at 11.

[47] 2255 motion at 6.

[48] R. Doc. No. 277, sentencing transcript at 2-9.  In view of the objection raised by Fanning, Lutcher's contention that this Court somehow limited Fanning's ability to object to the presentence report lacks merit.  <u>See</u> 2255 motion at 6.

[49] R. Doc. No. 277, sentencing transcript at 7.

never specifically attacked the evidence supporting the PSR's determination that Lutcher was responsible for in excess of 500 grams, but less than 1.5 kilograms, of cocaine base. Assuming *arguendo* that this failure satisfied the first *Strickland* prong, Lutcher does not explain how he suffered prejudice as a result. There was evidence at trial from which the Court determined, by a preponderance of the evidence, that Lutcher was responsible for over 500 grams of cocaine base. Recorded calls showed that Lutcher regularly called upon Lewis as a source of cocaine base;[50] moreover, Lewis testified that he sold approximately *eight kilograms* to Lutcher and his son during the course of the conspiracy. Any objection by Fanning to the evidentiary support for the PSR's, and the Court's, determination would have been overruled. Accordingly, to the extent Lutcher's argument singles out Fanning's failure to object to the evidentiary support for the PSR's finding, it fails to satisfy the second *Strickland* prong.

H.      *Failure to Appeal the Increase in Base Offense Level*

Lutcher contends that he received ineffective assistance of counsel when Aberle failed to present sentencing issues on appeal.[51] He contends that Aberle did not "raise the APPRENDI, BLAKELY, AND BOOKER issue on direct appeal."[52] The Court construes Lutcher's argument to be that Aberle failed to appeal the Court's finding that the appropriate base offense level was 36. As discussed above, there was testimony and recorded phone calls at trial that established, by a preponderance of the evidence, that Lutcher was responsible for over 500 grams of cocaine

---

[50] R. Doc. No. 274, trial transcript at 350-66.

[51] 2255 motion at 6.

[52] *Id.*

base. Any appeal on this issue would have, therefore, been unsuccessful. In order to satisfy the *Strickland* standard, appellate counsel need not raise arguments on appeal that will not prove meritorious. *See Phillips*, 210 F.3d at 348. The defendant has failed to show that appellate counsel rendered objectively unreasonable performance under the first *Strickland* prong.


I.      *Failure to Appeal the Career Offender Enhancement*

Lutcher states that he received ineffective assistance of counsel when Aberle "failed to challenge the career enhancement on appeal."[53] To the extent that Lutcher claims he was determined to be a career offender pursuant to U.S.S.G. § 4B1.1, his claim lacks support in the record. Lutcher was determined to fall into criminal history category III, and neither U.S. Probation nor the Court ever found that he was a career offender. His contention can be construed to mean that he contests Aberle's failure to appeal the PSR's and the Court's reliance on his prior 1993 felony conviction for possession with intent to distribute cocaine hydrochloride.[54] During the sentencing hearing, this Court overruled Lutcher's objection to the validity of the 1993 conviction and U.S. Probation's reliance thereon.[55] Lutcher provides no reason why Aberle's appeal of that issue would have been successful. To salsify the *Strickland* standard, appellate counsel need not raise arguments on appeal that will not prove meritorious. *See Phillips*, 210 F.3d at 348. The defendant has failed to show that Aberle rendered objectively unreasonable performance under the first *Strickland* prong. Accordingly, this claim lacks merit.

---

[53] *Id.*

[54] *Id.* at 7.

[55] R. Doc. No. 277, sentencing transcript at 10.

*J.      Failure to File a Rule 35 Motion Following Sentencing*

Lutcher contends that he received ineffective assistance of counsel when Fanning failed to file a Rule 35 motion following sentencing.[56]  However, he provides no information as to what the basis of any such motion would have been.  Without some explanation of why a Rule 35 motion should have been filed, this claim lacks merit.

*K.      Failure to Object to Jury Interrogatories*

Lutcher contends that Fanning was ineffective in failing to object to the special interrogatories to the jury.[57]  He makes no argument, however, as to what the nature of Fanning's objection should or could have been, let alone what prejudice he suffered as a result.  Accordingly, this claim lacks merit.

---

[56] Mem. supp. at 70-71.

[57] *Id.* at 59-65.

L.      *Failure to File a Rule 34 Motion*

Lutcher argues that Fanning should have filed a motion for arrest of judgment pursuant to Rule 34 of the Federal Rules of Criminal Procedure.[58]  Rule 34(a) provides:

> **(a) In General.**  Upon the defendant's motion or on its own, the court must arrest judgment if:
>> **(1)** the indictment or information does not charge an offense; or
>> **(2)** the court does not have jurisdiction of the charged offense.

Lutcher has not shown that either of these bases for the arrest of judgment apply.  Therefore, any Rule 34 motion would have lacked merit and Fanning's failure to make such a motion cannot be deemed objective unreasonable.  Accordingly, this claim lacks merit.

M.      *Other Claims*

It is difficult to discern from Lutcher's motion and accompanying documents the precise contours of his claims.  To the extent Lutcher raises any collateral issues not previously addressed in this opinion, the Court finds that he fails to satisfy the *Strickland* standard with respect to these claims and/or that these claims are procedurally defaulted as a result of his failure to raise them on direct appeal.

---

[58] *Id.* at 68-70

**IV.     CONCLUSION**

The Court has reviewed the allegations raised by Lutcher in his motion and various supporting documents.  With respect to those claims which are properly cognizable claims for relief in a § 2255 motion, the Court has found no merit.

Accordingly,

**IT IS ORDERED** that Lutcher's motion is **DENIED** and Lutcher's application for post-conviction relief pursuant to 28 U.S.C. § 2255 is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, May 26, 2009.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**